IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERRANCE TAYLOR

                       Plaintiff,                     Case No. 3:08 CV 2217

    -vs-

                                                         MEMORANDUM OPINION

KYLE MARTIN, etc., et al.,

                      Defendant.

KATZ, J.

This case is now before the Court on the motion for summary judgment (Doc. 24) filed by the defendants, Kyle Martin, the State of Ohio, and Jessie Williams, as well as a cross-motion for summary judgment filed by the plaintiff, Terrance Taylor (Doc. 28). Additionally, the defendants have filed a motion to strike certain portions of Taylor's response memorandum and affidavit (Doc. 33). The defendants' motion for summary judgment will be granted, and the other motions denied.

**I. Background**

On April 25, 2002, Taylor entered Alford pleas to robbery and abduction in Lucas County Common Pleas Court, and was sentenced to two years in prison. Pursuant to Ohio Rev. Code 2967.28 (B), Taylor was subject to a three year period of post-release control. The sentencing court, however, failed to include terms of post-release control in its sentencing entry. On January 23, 2004, pursuant to Ohio Rev. Code 2967.28 (B), the Ohio Adult Parole Authority placed Taylor on a three year period of post-release control. Taylor, however, violated the terms of his post-release control and, consequently, on August 15, 2005, he received a 180-day prison sanction.

On January 27, 2006, Taylor was released from prison as a result of the Ohio Supreme Court's decision in *Hernandez v. Kelly*, 108 Ohio St. 3d 395 (2006), which held that a post-release control sanction was unlawful unless imposed by the sentencing court in the sentencing entry. On February 26, 2006, the Lucas County Common Pleas Court issued a *nunc pro tunc sentencing* entry once again placing Taylor on post-release control. But on October 4, 2006, the Ohio Supreme Court held that trial courts were without power to issue such *nunc pro tunc* entries adding terms of post-release control after the original prison sentence had expired. See *Watkins v. Collins*, 111 Ohio St. 3d 425, 433 (2006).

On November 29, 2006, Kyle Martin, Taylor's parole officer, arrested Taylor for again violating the terms of his post-release control. Martin, who was responsible for supervising 60 to 90 released prisoners at a time, customarily relied on information from his supervisor and records provided by the Ohio Adult Parole Authority (OAPA) in determining whether an individual was subject to post-release control. It was not Martin's responsibility to determine for himself whether an individual should be placed on post-release control. (Doc. 24, Exh. 4 at ¶ 8). To Martin's knowledge, Taylor had been placed back on post-release control in March 2006, and was still properly on post-release control at the time of his November 29 arrest. Taylor admitted violating the terms of his post-release control, waived his right to a hearing, and was given a 148-day prison sanction to begin on December 15, 2006.

Taylor filed a state habeas corpus petition on February 15, 2007. The State of Ohio responded by releasing Taylor from prison, conceding that Taylor's incarceration was unlawful because the sentencing court lacked the power, under *Watkins*, to issue its *nunc pro tunc* sentencing entry reimposing post-release control. Taylor then filed this action, bringing claims for

2

unlawful seizure and false imprisonment under 42 U.S.C. 1983 and the Fourth Amendment, and for wrongful incarceration under Ohio Rev. Code 2743.48.

## II. Discussion

The only issue now before the Court is whether Martin is entitled to qualified immunity for his November 26, 2006 seizure of Taylor, for Taylor abandoned all of his other claims in his response brief. See Doc. 28 at 7-8.

The doctrine of qualified immunity protects government officials performing discretionary functions from civil liability under federal laws unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Like absolute immunity, qualified immunity "is an *immunity from suit* rather than a mere defense to liability . . . [and] is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). The protection afforded officers by the qualified immunity doctrine is broad, as it shields from liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Taylor argues that the Ohio Supreme Court's decisions in *Hernandez* and *Watkins* clearly established that his arrest was unlawful, and therefore Martin is not entitled to qualified immunity. There are several problems with this line of reasoning. For one thing, the qualified immunity inquiry focuses on whether Martin violated Taylor's clearly-established federal statutory or constitutional rights, not whether the arrest violated clearly-established Ohio law. See *Davis v. Scherer*, 468 U.S. 183, 194 & n. 12 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or

3

administrative provision," unless the statute or regulation violated gives rise to the cause of action brought). For another, the fact that Taylor's arrest violated Ohio law is not determinative of whether his arrest violated the Fourth Amendment. See *Virginia v. Moore*, 553 U.S. 164, 177 (2008) ("[I]t is not the province of the Fourth Amendment to enforce state law.").

Therefore, the appropriate inquiry is not simply whether Martin complied with Ohio law in arresting Taylor, but whether his conduct violated clearly-established Fourth Amendment standards. This inquiry "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 129 S.Ct. 808, 822 (2009) (internal quotation marks omitted). Taylor does not dispute that he failed to report for post-release supervision, and he concedes that Martin "gathered sufficient evidence on this point" prior to the arrest. Taylor's argument thus boils down to the claim that Martin should have independently researched whether Taylor was still properly subject to post-release supervision, as a legal matter, prior to arresting him.

Taylor's argument is without merit. It is settled that "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 129 S.Ct. at 815 (internal quotation marks omitted). In this case, it was objectively reasonable for Martin to rely on the word of his superiors and the records maintained by the Ohio Adult Parole Authority in determining whether Taylor was lawfully subject to post-release control. It would be outrageously inefficient and ineffectual to force busy parole officers to independently verify the Ohio Adult Parole Authority's record-keeping and legal determinations prior to making an arrest.

Therefore, whatever "mistake" led to Taylor's arrest is not properly attributable to Martin, and he is entitled to qualified immunity for his actions.

## III. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 24) is granted. Taylor's cross-motion for summary judgment (Doc. 28) is denied. The motion to strike (Doc. 33) is denied as moot, as the Court has determined that Martin is entitled to qualified immunity regardless of whether the language the defendants seek to strike is permitted to remain.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE